In the Matter of the Accounting upon the Estate of FREDERICK G. BOURNE, Deceased.

Surrogate's Court, Suffolk County, June, 1922.

Executors and administrators — accounting — when conveyance of real estate to two daughters of testator will not be set aside on the ground that the price paid was excessive — prior action in Supreme Court dismissed — commissions.

About two months after the probate of a last will and codicil by which an estate in excess of $44,000,000 was left to testator's eight surviving children in equal shares they held a meeting at which it was agreed that three pieces of real estate should be taken over by three of the heirs at the cost thereof, as shown on testator's books, i. e., one piece by a son at $40,000, another piece by another son at $125,000 and the other piece by still another son at $5,500.   It was further agreed at the same meeting that the executors should immediately endeavor to sell Dark Island, the house thereon and other real estate in the Thousand Islands adjoining, together with the contents of the house on Dark Island, for the best price possible, with a proviso that before making any contract for the sale of Dark Island they should report the amount they had been offered and were willing to take to two named daughters of testator, giving them or either of them the first privilege of buying the property at such figure.   According to the books of testator the cost of Dark Island with its improvements was $371,724.22, and shortly after said meeting of the heirs a bid of $370,000 for Dark Island was submitted to one of the executors by the husband of one of said daughters, on behalf of both of said daughters.   Pursuant to a contract between the executors and said two daughters Dark Island and the real estate adjoining were conveyed to said daughters for $389,120.97, and the deeds were recorded and bills for furnishings, appurtenances and boats were given.   Within two years and shortly after one of said daughters had become the sole owner of said property she brought an action against the executors to have the contract pursuant to which said property had been conveyed vacated and declared null and void on the ground of fraud and misrepresentation and in effect to have the conveyance set aside on the same ground.   Upon the proceeding for the settlement of the accounts of the executors it appeared that in the transfer tax proceeding made nearly two months before the contract of sale, Dark Island was appraised at $44,500, and had a market value very much less than it cost testator.   *Held,*

that as in the opinion of the court there was not enough in the case to set aside the conveyance made by the executors to the two daughters of testator, an objection by them to the account which virtually sought to set aside the same conveyance will not be sustained.

Under section 285 of the Surrogate's Court Act the executors were not entitled to commissions upon corporate stock specifically bequeathed.

Where the commissions already taken by the executors are less than they are authorized to take by an agreement in evidence signed by the heirs the executors are fully protected and within their rights in collecting the commissions thus far received, even though the items making up the aggregate value of the specific bequest of corporate stock are excluded.

PROCEEDING to settle accounts of executors.

*Ver Planc, Prince & Burlingame (William G. Ver Planc, Henry A. Prince, Nathan O. Petty* and *H. Snowden Marshall,* of counsel), for executors.

*Gifford, Hobbs & Beard (Anson McCook Beard* and *Francis Woodbridge,* of counsel), for contestants.

PELLETREAU, S.   The decedent, Frederick G. Bourne, a resident of Suffolk county, died on the 9th day of March, 1919, leaving a last will and testament and codicil thereto which were admitted to probate in this court March 15, 1919.   The executors thereof, Arthur K. Bourne and George P. Vail, duly qualified, entered upon the discharge of their duties and are now rendering their account.

The decedent was survived by eight children.   One son, Howard Bourne, died after his father.   The surviving children are Arthur K. Bourne, George G. Bourne, Alfred S. Bourne, Florence B. Hard, May B. Strassburger, Marion C. Bourne and Marjorie Bourne.

Two of the children, May B. Strassburger and Marjorie Bourne, have filed objections to the account.   The other five children seem to be in accord and are satisfied with the account as rendered.

The record shows it to be an estate something in excess of $44,000,000.   It would seem there should be enough to go around, as all the heirs fare alike under the will.

Much testimony has been taken relative to objection number XVI, which relates to a conveyance to Marjorie Bourne and May B. Strassburger, for a consideration of $389,120.97, of property at Thousand Islands, known as the Dark Island property, with some furnishings and appurtenances therewith.

At a meeting of the heirs held May 19, 1919, it was agreed that three pieces of property should be taken over by three of the heirs at the cost thereof as shown on the testator's books, *i. e.,* the property in Glen Cove, by George G. Bourne at $40,000; the Ludlow place at Oakdale, by Alfred S. Bourne at $125,000, and

some land at Oakdale, by Arthur K. Bourne at $5,500. These prices were at the cost at which these properties were carried on the books of the testator.

At the same meeting the following was agreed to: " That the Executors should immediately endeavor to sell Dark Island and the other real estate in the Thousand Islands, adjoining, together with the contents of the house on Dark Island, for the best price possible, but before making any contract for its sale that they should report the amount that they had been offered and are willing to take, to Mrs. Strassburger and Miss Marjorie Bourne, giving them or either of them the privilege of buying the property first at such figure."

Shortly thereafter Mr. Strassburger, in behalf of his wife, May B. Strassburger, and Marjorie Bourne, submitted a bid to Mr. Vail, one of the executors, of $370,000 for Dark Island. The cost of Dark Island with its improvement, according to the books of testator, was $371,724.22. On the 26th of May, 1919, a contract of sale was entered into between the executors of the will of Frederick G. Bourne and the said May B. Strassburger and Marjorie Bourne for the sale of Dark Island, together with Corn Island, Marsh Island and Cordwood Island, with the contents and buildings thereon, certain boats, with membership and interest in a couple of sporting clubs, for $389,120.97. Thereafter same were duly conveyed as per contract. It was provided in such contract that the consideration above should be paid by the delivery of receipts by the grantees for that amount as against their interest in the residuary estate of the testator. At or before the closing the method of payment was changed by exchange of checks. Under the agreement of sale Dark Island was conveyed June 12, 1919, and the deed was recorded in St. Lawrence county July 1, 1919. Thereafter, and on November 24, 1919, the other small islands heretofore referred to, and lying within Canadian territory, were, likewise, conveyed and the conveyance recorded in Canada. Bills of sale for furnishings, appurtenances and boats were given at or before the latter date.

Thereafter, and on the 26th day of September, 1921, May B. Strassburger conveyed her interest in Dark Island to her sister Marjorie Bourne. On the 30th of September, 1921, she, likewise, conveyed her interest in Corn, Cordwood and Marsh Islands, and on the 31st day of October, 1921, gave various bills of sale for furniture, boats and chattels in and upon said islands to Marjorie Bourne.

This entire transaction as to Dark Island is the one referred to in the XVIth objection filed herein. Very much testimony has

Surrogate's Court, Suffolk County, June, 1922.  [Vol. 119

been taken upon both sides, the contestants alleging fraud and misrepresentation upon the part of the executors of the will of Frederick G. Bourne in bringing about the sale.  The executors deny such charges and claim to have acted in good faith.

It is not substantially disputed but that the cost to Mr. Bourne of the various properties hereinbefore referred to as being distributed to his children by agreement, is correct as per figures hereinbefore given.  Neither is it substantially disputed but that the four separate properties on Long Island sold to Mrs. Hard, Arthur K. Bourne, Alfred S. Bourne and George G. Bourne, had a market value as great as what they paid for the same.

It is claimed by the contestants, and I think their contention in that respect is substantially correct, that Dark Island has a market value very much less than it cost Mr. Bourne in his lifetime. In the transfer tax proceedings it was appraised at $44,500.  The total of the American properties in the St. Lawrence river were appraised at $44,750, including Dark Island, and the total of the Canadian properties at $4,700.

The appraisal for transfer tax purposes was made July 22, 1919, nearly two months after the contract was made to sell Dark Island to the contestants.  Such appraisal was made by Joseph B. Reid of Alexandria Bay.

On or about the 7th of November, 1921, and shortly after she had become the sole owner of the property, Marjorie Bourne brought an action in the Supreme Court of New York county against the above-named executors to have vacated and declared null and void the aforesaid agreement of May 26, 1919, under which Dark Island, Corn Island, Marsh Island and Cordwood Island and certain furnishings thereon, and certain chattels, were conveyed to said contestants, and to compel the said executors to accept deeds and bills of sale for the aforesaid real and personal property theretofore tendered by the plaintiff to them and to repay the plaintiff the consideration received for same, with interest, etc.  A copy of the summons and complaint has been introduced in evidence in this proceeding.  The grounds for the action as recited in the complaint were, in effect, alleged fraud and misrepresentation.  The aforesaid action, in effect, is an action in equity to set aside a conveyance for fraud and misrepresentation. In my opinion there is not enough in the case to set aside the conveyance, and that being so this objection XVI should not be sustained.  I believe the same rule should apply in the consideration of this objection that applies in the action which is virtually to set aside a conveyance.

It probably is true that Dark Island cannot be sold for any-

thing like what Miss Bourne has paid for it.    It is likewise true that its replacement value is, at least, as great as she paid for it. Such properties have no definite, fixed, active or real market. The sale of such property depends upon whether or not it takes the eye of someone who wants it and is willing and able to pay for it. Constructions and improvements were made in and upon that island at great expense, to suit the whim or taste of its then owner. It suited him.    Apparently, it pleased Miss Bourne; she wanted it, and asked her brother-in-law to bid $370,000 for it.    That is undisputed.    Miss Bourne was a wealthy woman.    If she wanted the property for reasons satisfactory to herself she was able to gratify her desire.    Is it reasonable to suppose that the Bourne family would desire to sell such properties at public auction, or is it likely that they would have been willing to sell this property at the figure at which it is appraised for transfer tax purposes?

I am not satisfied that there was any fraud or deception or misrepresentation practiced upon her to induce her to make the purchase.    Miss Marjorie Bourne claims that her brother told her that he had an offer of about $500,000 for Dark Island from a Mr. Peacock; that she told him that she did not want Dark Island to go out of the family as her father loved it; that she wanted to keep it in the family; that Arthur replied that nobody else in the family wanted Dark Island, and that she (Marjorie) could not afford to buy it herself.    Her brother Arthur denies that he told her that there was a bid of $500,000 from Mr. Peacock.    If he did tell her that, or if she believed it to be a fact, I cannot understand why she should have directed Mr. Strassburger to make a bid for her of $370,000, as she would have known in advance that it was inadequate.

No court will ever set aside a conveyance of real property except upon the most satisfactory and substantial evidence.    It certainly should not be lightly done.

People sometimes go shopping, enjoying the experience of purchasing goods which please the eye.    The next day they send them back.    The good-natured and patient merchant takes back the goods; he does not have to do so.    Buyers are often dissatisfied with their purchases for one reason or another.    Oftentimes it is simply a state of mind.    It is unfair to allow them to avoid their bargains.    Far more strongly does this apply in a sale of real estate.

When she bought it, Miss Bourne knew all about Dark Island, its attractive features or lack of them.    I do not think the estate should refund the money she paid for it.

Considerable testimony has been taken as to various transactions

Surrogate's Court, Suffolk County, June, 1922.          [Vol. 119

by the executors in handling various securities of the estate, and converting the same into money, or in the purchase of other securities. It is true some losses were made in bond and stock transactions in 1919 and 1920. It is a matter of common knowledge that those years were a period of financial readjustment and great uncertainty. It was difficult to know what to sell or what to buy or when. Some of the wisest were in error in making financial commitments. Mr. Frederick G. Bourne selected the executors. He knew what manner of men they were. Executors are not expected to use infallible judgment. They are expected to use their best judgment. And they are expected to be honest. I believe the executors acted in good faith and exercised their best judgment in all their various transactions.

Certain payments have been made to the executors on account of their commissions as such, under agreement with the heirs. It so appears in the account. To George P. Vail was paid $165,000 and to Arthur K. Bourne $127,251.56. Among other things, the will of the testator provided:

" *Fourth.* I give and bequeath to each of the following charities or institutions to be its property absolutely and forever the sum of ten thousand dollars, and also the number of shares of my stock in the City and Suburban Homes Company set opposite the name of each respectively, viz.:" (Followed by a list of institutions and specification of number of shares.)

" *Fifth.* I give and bequeath unto Arthur Keeler Bourne and Clayton Mayo, their survivors and successors all my shares of and interest in the capital stock of the Singer Manufacturing Company, a corporation duly organized and existing under the laws of the State of New Jersey, in trust, nevertheless as follows:" (Followed by provision setting up trust for each surviving child.)

" *Codicil.* I hereby bequeath to the Cathedral Church of St. John, the Divine, in the City and Diocese of New York, all shares of the Provident Loan Society of New York belonging to me at the time of my death, as the same appear of record in my books, for the use of the Cathedral School and to be added to the fund known as the Bourne Fund," etc. The account shows that the stock in the City and Suburban Homes Company was of the value of $120,500; that the stock of the Singer Manufacturing Company was of the value of $18,038,520, and the stock of the Provident Loan Society was of the value of $93,000. The aggregate of these items is $18,252,020. I am of the opinion that the last above bequests of the above-named stocks were *specific.* The law provides in the awarding of commissions under section 285 of the Surrogate's Court Act, as follows: " The value of any real or

personal property, to be determined in such manner as the Surrogate may direct, and the increment thereof received, distributed or delivered, shall be considered as money in making computation of commissions. *But this shall not apply in case of a specific legacy or devise."*

I conclude that the executors, under the above provision of law, are not entitled to commissions upon the value of the above stock aggregating in value $18,252,020.

I am satisfied that the executors' commissions already taken are less than they are authorized to take by the agreement signed by all of the heirs and dated November 3, 1919, and in evidence in this proceeding. The executors are entirely protected and within their rights in collecting the commissions thus far received, even though the items making up the above $18,252,020 be excluded.

All of the objections filed herein by May Bourne Strassburger and Marjorie Bourne and verified February 14, 1922, are denied, and the account is approved.

Enter decree accordingly.

Decreed accordingly.